UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
Orlando Division

JIAN-JIAN REN,

          CASE NO.: 6:04-CV-257-ORL-18-JGG

  Plaintiff,

vs.

UNIVERSITY OF CENTRAL FLORIDA
BOARD OF TRUSTEES,

  Defendant.
_____/

## DEFENDANT'S MOTION FOR FINAL SUMMARY JUDGMENT

  DEFENDANT, University of Central Florida Board of Trustees, ("UCF"), by and through its undersigned attorneys and pursuant to Federal Rule of Civil Procedure 56, moves this Court to enter final summary judgment in its favor and as grounds therefore states:

### I.  PRELIMINARY STATEMENT

  1. Plaintiff has brought an action for discrimination based on gender and retaliation for UCF's failure to promote her under Title VII of the Civil Rights Act, as amended, 42 U.S.C. § 2000e, *et seq.*; the Florida Civil Rights Act of 1992 as set forth in Chapter 760, *Florida Statutes*; and the Florida Educational Equity Act as set forth in Chapter 1000, *Florida Statutes*.  See Docket Entry No. 1.

PDF created with pdfFactory trial version www.pdffactory.com

2. Plaintiff is an Associate Professor at the University of Central Florida in the University's Department of Mathematics. She applied for a promotion to the rank of Full Professor. As with all applications for promotion, Plaintiff's application went through seven different levels for consideration.

3. First, the Department of Mathematics Promotion and Tenure Committee, a four member committee, voted unanimously in favor of Plaintiff's promotion.

4. Second, the Chair of the Department of Mathematics voted against Plaintiff's promotion.

5. Third, the College of Arts and Sciences Promotion and Tenure Committee, a seventeen member committee, voted six (6) in favor and eleven (11) against Plaintiff's promotion.

6. Fourth, the Dean of the College of Arts and Sciences voted against Plaintiff's promotion.

7. Fifth, the University Promotion and Tenure Committee, a six member committee, voted four (4) in favor and two (2) against Plaintiff's promotion.

8. Sixth, the Provost, as Vice President of Academic Affairs, voted against Plaintiff's promotion.

9. Lastly, the Provost conferred with the President of UCF who ultimately decided against Plaintiff's promotion.

10. Plaintiff only alleges acts of discrimination and bias against the Chair of the Department of Mathematics (the second level of consideration).

11. Plaintiff claims that the Chair's alleged bias tainted the entire promotion process.

## II. STATEMENT OF FACTS

Defendant has filed a separate Statement of Facts contemporaneous with its Motion for Final Summary Judgment. Citations to particular facts discussed fully in Defendant's Statement of Facts will be made to the corresponding paragraph number(s) within that pleading. For example: See Defendant's Statement of Facts, ¶ 1.

## III. MEMORANDUM OF LAW IN SUPPORT

### A. STANDARD OF REVIEW FOR MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate only when the district court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Fed.R.Civ.P. 56(c). In making this determination, the district court must view all of the evidence in a light most favorable to the non-moving party. See Samples on Behalf of Samples v. Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988). The moving party has the initial burden of establishing the absence of a genuine issue of fact. Celotex Corp. v. Catrett, 477

PDF created with pdfFactory trial version www.pdffactory.com

U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  Next, the "non-moving party bears the burden of coming forward with sufficient evidence of every element that he or she must prove."  Rollins v. Techsouth, Inc., 833 F.2d 1525, 1528 (11th Cir. 1987).  To that end, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file", designate "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324.

### B. PLAINTIFF HAS FAILED TO MEET THE *McDONNELL* TEST REGARDING HER CLAIM OF DISCRIMINATION IN HER APPLICATION FOR PROMOTION.

Because the evidence in this case lacks any direct evidence of discrimination, this case falls under the analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Based on McDonnell and its progeny, in a failure-to-promote case, the Plaintiff must establish a prima facie case by demonstrating (1) that she is a member of a protected class (female), (2) that she was not given the promotion for which he applied (Full Professor), (3) that she was qualified for the position, and (4) that someone outside of the protected group was given the position.  See e.g., Coutu v. Martin County Bd. of County Commissioners, 47 F.3d 1068, 1073 (11th Cir. 1995). Under this framework, Plaintiff has failed to establish a prima facie case by failing to prove prongs 3 and 4.

First, Plaintiff has failed to prove that she was qualified to be promoted to the

PDF created with pdfFactory trial version www.pdffactory.com

rank of Full Professor when she applied in the Fall of 2002. Plaintiff joined UCF's Math Department in the Fall of 2001. See Defendant's Statement of Facts, ¶ 48. When she was hired at UCF, Dr. Ren was hired at the rank of Associate Professor with tenure. See Defendant's Statement of Facts, ¶¶ 49, 51.

One of Dr. Ren's biggest advocates for her promotion, Dr. Gary Richardson, agreed that Dr. Ren's record when she was hired warranted a "senior Associate Professor" ranking. See Defendant's Statement of Facts, ¶ 227. Because of the recent timing of Dr. Ren's appointment at UCF, every faculty member involved in considering Dr. Ren's application that has testified in this case believed that it was most important to determine what accomplishments Dr. Ren achieved since first being hired at UCF. See Defendant's Statement of Facts, ¶¶ 98, 101-102, 127, 144, 161, 202-203, 216, 230. Otherwise, it would raise the question of whether there was an error made in her recommendation at the time of appointment.

A candidate for promotion to Full Professor must demonstrate excellence in three categories: Research, Teaching, and Service. See Defendant's Statement of Facts, ¶ 59. Under the Research category, a record of sustained research is reflected in the candidate's publication record. See Defendant's Statement of Facts, ¶ 64. In other words, the candidate's publications are the fruit of the research efforts. Similarly, research grants input into that process. See Defendant's Statement of Facts, ¶ 65. Research grants are funding that are expected to lead to

PDF created with pdfFactory trial version www.pdffactory.com

publications.  Id.

Dr. Nashed, as the Chair of the Math Department, believed that Dr. Ren's research record was not sustained so as to warrant promotion to Full Professor.  See Defendant's Statement of Facts, ¶¶ 101-102.  Plaintiff's entire case for discrimination centers around Dr. Nashed's evaluation.  See Docket Entry No. 1; see also Defendant's Statement of Facts, ¶ 281.

When the College Committee considered Dr. Ren's application, the committee expressed, for the first time during the process, a concern over Dr. Ren's teaching record.  See Defendant's Statement of Facts, ¶ 127-129.  Dr. Whitehouse, as Provost, evaluated Plaintiff's file and found that Plaintiff did not meet the standards for promotion to Full Professor based on the Teaching criteria.  See Defendant's Statement of Facts, ¶ 183.

Dr. Whitehouse recognized that Dr. Ren had only taught three courses since coming to UCF where at least two of which, Calculus 1, was a basic course.  See Defendant's Statement of Facts, ¶ 185.  The one course that Dr. Ren taught that was the graduate level course was not in the Mathematics Department at all but rather in the Statistics Department.  See Defendant's Statement of Facts, ¶ 186.  Dr. Whitehouse also noted that Dr. Ren had only supervised one Ph.D. candidate at that point in time.  See Defendant's Statement of Facts, ¶ 187.  Even during one of Dr. Ren's meetings with Dean Seidel, Dean Seidel made a comment that Dr. Ren did

not have many Ph.D. students.  See Defendant's Statement of Facts, ¶ 188.

With regard to Dr. Ren's teaching effectiveness, student evaluations indicated a ranking from fair to good.  See Defendant's Statement of Facts, ¶ 190.  Dr. Whitehouse clarified that his evaluation of Dr. Ren's teaching performance was not based on the numeric values indicated in the student evaluations, but rather a relative comparison of Dr. Ren's performance to the others at the University.  See Defendant's Statement of Facts, ¶ 191.  In other words, Dr. Whitehouse did not utilize the numeric value attached by the students to the evaluations since, according to Dr. Whitehouse, no one scores poorly.  But in evaluating the faculty based on student evaluations relative to one another, Dr. Ren's rating would be at the lower level.  See Defendant's Statement of Facts, ¶ 192.

In fact, Dr. Ren's average student evaluation score for the graduate course she taught in the Fall of 2002 was 2.75.  See Defendant's Statement of Facts, ¶ 194.  However, the average evaluation score for all graduate courses in mathematics for the Fall of 2002 was 3.57.  See Defendant's Statement of Facts, ¶ 195.  Further, Dr. Ren's average student evaluation score for the graduate course she taught in the Spring of 2003 was 2.57.  See Defendant's Statement of Facts, ¶ 196.  However, the average student evaluation score for all graduate courses in mathematics for the Spring of 2003 was 3.42.  See Defendant's Statement of Facts, ¶ 197.

Dr. Ren has done no investigation or comparison to rebut those figures.  See

PDF created with pdfFactory trial version www.pdffactory.com

Defendant's Statement of Facts, ¶ 198. Even Dr. Richardson, who served on the Department's Promotion and Tenure Committee and who voted in favor of Dr. Ren's promotion, testified that a pattern of poor student evaluations would factor into the consideration as to a faculty's teaching effectiveness. See Defendant's Statement of Facts, ¶ 199.

Dr. Ren agrees that in considering a candidate for Full Professor, teaching and research are a faculty member's primary activities and thus are the primary basis for promotion. See Defendant's Statement of Facts, ¶ 200. However, Plaintiff attempts to establish her case for discrimination around the principle that her Research record, alone, should entitle her to promotion to Full Professor. See Plaintiff's Expert Report attached as Exhibit A to Defendant's Motion to Exclude. Plaintiff hired a so-called expert whose opinion on Plaintiff's entitlement to the promotion to Full Professor was completely silent as to her Teaching record.

As the College Committee quoted in its evaluation from the University guidelines for promotion: "substantial contributions of a continuing nature in each of the areas beyond that expected of an associate professor are necessary components for the achievement of the rank of professor." See Defendant's Statement of Facts, ¶ 128 (emphasis in original). The undisputed evidence in this case shows that Plaintiff's teaching record did not change since being appointed to the rank of Associate Professor at UCF only one year prior to her application. If

PDF created with pdfFactory trial version www.pdffactory.com

anything, Plaintiff's teaching record declined since being appointed as Associate Professor at UCF. The undisputed evidence shows, however, that the candidate must show excellence at <u>all</u> areas (including Teaching) beyond that of an Associate Professor to meet the criteria for Full Professor. As a result, Plaintiff has failed to show that she qualified for the promotion under the third prong of <u>McDonnell</u>.

The Plaintiff also cannot identify a comparator under the fourth prong of <u>McDonnell</u>. In other words, there is no one outside of the protected group that was given the position sought by Plaintiff in this case. Moreover, there is no one that Plaintiff can identify outside of her protected group that, under like circumstances, was treated differently. Plaintiff attempts to use the promotion of Dr. Morgan Wang as such comparator.

However, Dr. Wang is a faculty member in UCF's Statistics Department. Unlike the Math Department, the Statistics Department is not a Ph.D. granting department. Dr. Richardson, the Chair of the Department's Promotion and Tenure Committee believes that the standards for promotion in the Math Department are higher than the standards for promotion in the Statistics Department. <u>See</u> Defendant's Statement of Facts, ¶ 283.

Dr. Tucker, the Chair of the University's Promotion and Tenure Committee, recognized that the disparities between Dr. Ren and Dr. Wang's record is that Dr. Wang is in a completely different department than Dr. Ren where there is less

PDF created with pdfFactory trial version www.pdffactory.com

research in terms of meeting the promotion criteria.  See Defendant's Statement of Facts, ¶ 284.  Dr. Tucker testified that there is a practice for applying different promotion standards within Departments that do not grant Ph.D.'s.  Dr. Tucker explained that the mission of a department changes dramatically from those that do not offer Doctoral degrees.  Dr. Tucker explained that there are many things that are different about the dynamics of a Department and certainly criteria for promotion.  See Defendant's Statement of Facts, ¶ 285.

For example, there is more emphasis in Doctoral programs on research.  As for teaching, dissertation supervision and mentoring Doctoral students is another significant difference.  See Defendant's Statement of Facts, ¶ 285.  UCF's President Hitt explained that standards for promotion vary depending on the level of program that the Department has and the discipline; for instance, a program that has only a Baccalaureate degree versus one that would offer a Doctorate degree.  See Defendant's Statement of Facts, ¶ 286.  Standards of scholarship would obviously be higher in a Doctoral department than they would be in one only offering a Bachelor's or Master's degree because the resources available to faculty members typically differ by that level.  See Defendant's Statement of Facts, ¶ 286.  The Statistics Department is not a Doctoral-granting Department.  Therefore, the expectation level is adjusted.  While teaching might not differ, out of the three criteria, "Teaching, Research and Service," research productivity and reputation

PDF created with pdfFactory trial version www.pdffactory.com

requirements probably would.  See Defendant's Statement of Facts, ¶ 286.

According to Dr. Whitehouse, in comparing Dr. Ren and Dr. Wang's application for promotion, one was from a Master Degree's granting department and one was from a Ph.D. granting department.  According to Dr. Whitehouse, they are not comparable.  See Defendant's Statement of Facts, ¶ 289.  Further, Dr. Ren does not know whether there were any candidates prior to herself who would have been qualified in the Math Department for a Full Professorship position.  See Defendant's Statement of Facts, ¶ 290.

Accordingly, Plaintiff has failed to establish her burden of meeting the fourth prong of McDonnell.

Following McDonnell, should Plaintiff prove a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision.  McDonnell Douglas, 411 U.S. at 802-04; Burdine, 450 U.S. at 252-53.  The employer's burden is one of production, not persuasion.  St. Mary's Honor Center v. Hicks, 509 U.S. 502, 510-11 (1993).  And, this burden is "exceedingly light."  Meeks v. Computer Associates Int'l, 15 F.3d 1013, 1019 (11th Cir. 1194).  Finally, if Defendant carries its burden of production, Plaintiff must carry his ultimate burden of proving intentional discrimination by a preponderance of the evidence. Hicks, 509 U.S. at 511.

In this case, even assuming that Plaintiff met her burden of proving a prima

PDF created with pdfFactory trial version www.pdffactory.com

facie case, which Defendant denies that she has, Defendant has clearly articulated nondiscriminatory reasons for its decisions.  Plaintiff is clear that she attributes the discriminatory conduct only on the part of the Department Chair, Dr. Nashed. Plaintiff theorizes that Dr. Nashed unduly influenced the entire promotion process such that his discriminatory animus carried its way to the upper most level of UCF's promotion process, i.e., the Provost and President.

However, the record evidence shows that Dr. Whitehouse, as Provost, recommended against Plaintiff's promotion based on her inadequate Teaching record, not on her Research record as Dr. Nashed relied.  Further, Plaintiff's weak teaching record since coming to UCF was seen by Dr. Tucker, the Chair of the University Committee and appears in the written evaluation by the College Committee.

Accordingly, any "presumption of discrimination created by the McDonnell Douglas framework 'drops from the case,' and 'the factual inquiry proceeds to a new level of specificity.' "  Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997) (quoting Burdine, 450 U.S. at 255 & no.10).  Plaintiff now must demonstrate that the proffered reason was not the true reason for the employment decision.

However, the Eleventh Circuit has also emphasized:  "Title VII is not a shield against harsh treatment at the workplace."  Jackson v. City of Kileen, 654 F.2d 1181, 1186 (5th Cir. 1981).  Nor does the statute require the employer to have good

PDF created with pdfFactory trial version www.pdffactory.com

cause for its decisions. The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason. While an employer's judgment or course of action may seem poor or erroneous to outsiders, the relevant question is simply whether the given reason was a pretext for illegal discrimination. The employer's stated legitimate reason does not have to be a reason that the judge or jurors would act on or approve. <u>Loeb v. Textron, Inc.</u>, 600 F.2d 1003, 1012 n.6. <u>Nix v. WLCY Radio/Rahall Communications</u>, 738 F.2d 1181, 1187 (11th Cir. 1984).

Whether Plaintiff agrees with Dr. Whitehouse's evaluation or not, there is ample evidence in this case that he, as well as others in the process, reviewed Plaintiff's application file independently and without Dr. Nashed's undue influence. As a matter of fact, because Plaintiff accused Dr. Nashed of discriminating against her and included those accusations in written rebuttals within her application file, Dr. Whitehouse and others knew of the threat of possible discrimination. Those involved in the process testified that Plaintiff accusations caused them to take a closer and more independent review of her file. If anything, Plaintiff accusations of discrimination acted in her favor to ensure that those involved in the process simply did not "rubber stamp" Dr. Nashed's recommendation, but rather took a careful look at her credentials.

PDF created with pdfFactory trial version www.pdffactory.com

## C. PLAINTIFF HAS FAILED TO ESTABLISH A CLAIM FOR RETALIATION

To establish a prima facie case of retaliation, Plaintiff must show: (1) a statutorily protected expression; (2) an adverse employment action; and (3) a causal connection between her expression and the adverse employment action. Berman v. Orkin Exterminating Co., Inc., 160 F.3d 697, 701 (11th Cir. 1998). To establish a causal link, a plaintiff must "show that the decision makers were aware of the protected conduct and that the protected activity and the adverse action were not wholly unrelated." Id. at 590, quoting Farley v. Nationwide Mut. Ins., 197 F.3d 1322, 1337 (11th Cir. 1999). The causal connection may be demonstrated by either direct evidence, or based upon inferences that arise from the temporal proximity of an adverse employment action that closely follows protected activity. See Maniccia, 171 F.3d at 1369-70. The mere fact that an alleged adverse employment action followed protected activity does not establish a causal connection between the two. Gleason v. Mesirow Financial Inc., 118 F.3d 1134, 1147 (7th Cir. 1997).

Dr. Nashed testified that he does not use teaching assignments as a tool for retaliation. He tries to be as fair as possible and to give the best assignments to people according to the Department's needs and according to the constraints that the faculty members have. See Exhibit A; Nashed, p. 93, lns. 15-19. In fact, in the Fall of 2002 and the Spring of 2003, Dr. Ren requested a two-day-per-week teaching

PDF created with pdfFactory trial version www.pdffactory.com

schedule.  See Defendant's Statement of Facts, ¶ 276.  Dr. Nashed accommodated Dr. Ren by providing her with a reduced teaching load.  See Defendant's Statement of Facts, ¶ 276.

Dr. Ren believes that Dr. Nashed has retaliated against her by giving her two evaluations that she believed were lower than what she deserved.  See Exhibit C; Ren, p. 400, lns. 7-22.  However, Dr. Ren admitted that she has received no financial repercussions and her salary has not been affected by the past two evaluations performed by Dr. Nashed.  See Exhibit C; Ren, p. 412, lns. 6-22.

The employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances.  Doe v. Dekalb County School District, 145 F.3d 1441 (11th Cir. 1998) (holding "to establish an adverse employment action, a plaintiff must demonstrate that a reasonable person in his position would view the employment action in question as adverse; the standard is objective, not subjective).

The Eleventh Circuit held in Doe that a school teacher's involuntary lateral transfer to a different classroom does not constitute an adverse employment action because the plaintiff did not show that a reasonable person in her position would have found her transfer to be adverse under all the facts and circumstances.  The Court noted that "any adversity must be material; it is not enough that a transfer

PDF created with pdfFactory trial version www.pdffactory.com

imposes some de minimis inconvenience or alteration of responsibilities."  Likewise, in determining whether the plaintiff's transfer was adverse, the district court was instructed not to rely on its determination that the transfer was involuntary.  Id.

Also, the Court in Sanchez v. Denver Public Schools, 164 F.3d 527 (10th Cir. 1998) affirmed the district court's entry of summary judgment for the defendant, finding that the school district did not take an adverse employment action against the teacher by transferring her to another school.  In Sanchez, the plaintiff was an elementary school teacher who was transferred to another school site as an elementary school teacher at the same rate of pay. Id. at 532.  In response, the plaintiff brought claims of sex and age discrimination and retaliation for filing charges of discrimination. The Sanchez Court cited Doe with approval, finding because the plaintiff's rate of pay remained the same, and the transfer did not entail significant changes in the employee's conditions of employment, it could not be an adverse employment action.

Similar to the plaintiffs in Doe and Sanchez, Plaintiff did not suffer an adverse employment action just because her last two evaluations were not what she expected.  Most significantly, it is undisputed that Plaintiff did not lose any salary, benefits, or seniority because of it.

To the extent that Plaintiff may claim retaliation for not being promoted after she included accusations of discrimination in her written rebuttals, the evidence in

the records shows that everyone involved after Plaintiff complained viewed the issue as favoring Plaintiff, not working against her. The allegations of discrimination in Dr. Ren's rebuttal letters in her promotion file, if they had any effect, would have been in her favor in terms of Committee members wanting to find in favor of her promotion. See Exhibit F; Tucker, p. 110, lns. 12-25.

Dr. Tucker in no way reviewed Dr. Ren's rebuttals negatively because she was bringing up the issue of discrimination. See Exhibit F, Tucker, p. 281, lns. 20-23. Dr. Tucker, Dean Seidel, and Dr. Whitehouse all, based on their own experiences, expressed sensitivity to accusations of gender discrimination. In fact, Dr. Tucker believes that as committee members learned of the accusations it may have had a positive effect because it would have caused them to view her file more positively. See Exhibit F, Tucker, p. 282, lns. 3-12.

While Plaintiff's tone was in many ways unprofessional, Dr. Whitehouse believed that it was appropriate for Dr. Ren to raise issues of discrimination in her rebuttal letters if she wished. See Exhibit H, Whitehouse, p. 147, lns. 9-12.

There is no evidence that Plaintiff's accusations of discrimination contained in rebuttal letters and placed in her application file had anything but a constructive effect on her application.

PDF created with pdfFactory trial version www.pdffactory.com

Respectfully submitted,


   <u>/s/ Paul S. Jones</u>
Paul S. Jones, Trial Counsel
Florida Bar No. 149550
Luks & Santaniello, LLC
255 S. Orange Ave., Suite 930
Orlando, Florida  32801
(407) 540-9170
Facsimile (407) 540-9171

And

Youndy C. Cook
Florida Bar No. 0084727
University of Central Florida
P.O. Box 160015
4000 Central Florida Blvd., MH 360
Orlando, Florida   32816-0015
(407) 823-2482
Facsimile: (407) 823-6155

PDF created with pdfFactory trial version www.pdffactory.com

## CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** that a true and correct copy of the foregoing was sent via U.S. mail on this 4th day of April, 2005, to: **Mary B. Meeks, Esquire, DeCubellis & Meeks, P.A., Attorneys for Plaintiff, P.O. Box 4976, Orlando, Florida 32802-4976.**

LUKS, SANTANIELLO, PEREZ,
PETRILLO & GOLD
The Citrus Center
255 S. Orange Avenue, Suite 930
Orlando, Florida 32801
(407) 540-9170
(407) 540-9171 - Fax


__/s/ Paul S. Jones_____
PAUL S. JONES
Florid a Bar No.: 149550

PDF created with pdfFactory trial version www.pdffactory.com